Where a holographic will was so folded that the attesting witnesses could not see testatrix's signature, a statement by her to them, "This is my will. I want you to sign it,"—is not an acknowledgment (2 Rev. St. p. 63, § 40) by testatrix of her signature.

Proceeding for the probate of the will of Lucy H. Eakins, deceased. Denied.

Benjamin M. Coon (Peter Cantine, of counsel), for proponent.
Jas. A. Ryan, for contestant.

BETTS, S. Lucy H. Eakins died at Glasco, in this county, on November 17, 1893; leaving, her surviving, Sarah J. Maginnis, a daughter, and John S. Eakins and George H. Galvin, sons, all of full age. She was possessed of certain real estate, estimated to be worth about $5,000, and personal property, about $200. On January 21, 1895,— over one year and two months after her death,—application is made by petition in this court for the probate of a paper writing alleged to be the last will and testament of deceased, bearing date August 15, 1890, by Sarah J. Maginnis, one of the executrices named therein. The son George H. Galvin files verified objections to the probate of the will, the principal one insisted on at the trial being that the paper was not executed in accordance with the statute. The following is a copy of the paper offered for probate:

"Mattie Holsten.
"Catharine McFetridge X.

"Brooklyn, August 15, 1890.

"I will and bequeath to my daughter Sarah J. Maginnis my House and Lot known as a 107 Driggs St. and all my Household effects my clothes and everything belonging to me in Any way and appoint her and Mrs. Sarah J. Quinn of 124 South first St. Brooklyn executriss of this my last will and testament.                                      Lucy H. Eakins."

There was no attestation clause.

This paper writing is very peculiar. It bears the appearance of having been written by deceased, or some one entirely unfamiliar with drawing wills, and is apparently all in the same handwriting, including the signature. The writing (exclusive of the signatures of Holsten and McFetridge) occupies about three-fourths of what is apparently the second page, or inside page, of a small sheet of note paper folded in two leaves. About one-third of the second leaf, or third and fourth pages, of this sheet, has been torn off, and the remainder of said third and fourth pages is entirely blank. On what I should consider the first page of this document is written "Mattie Holsten" and "Catharine McFetridge X." So that the first that is met with, in an examination of this remarkable document, is what is claimed to be the signatures of the witnesses. The signatures of the alleged witnesses precede the alleged will, and are on the reverse side of the paper from which the writing is.

Catharine McFetridge, of Brooklyn, N. Y., being too ill to come to Kingston, and it appearing that Mattie Holsten was her daughter, and necessarily in constant attendance upon her, an order was made for their examination before Hon. George B. Abbott, surrogate of Kings county. By consent of parties this examination was taken at the bedside of Mrs. McFetridge by the clerk of the surrogate's court of Kings county. It appeared from the evidence of these two witnesses that they were on their way to church, when deceased called them in the basement of the house in Brooklyn, in which all three lived, and said either, "This is my will. I want you to sign it," or, "I have made my will. I want you to sign it. Just put your name here," placing her hand on the back of it, according to Mattie Holsten, and saying either, "This is my will," or "I made my will. I want you and your daughter to sign it," according to testimony of Catharine McFetridge. She did not use the word "witness." The witnesses did not see the inside of the paper, nor the signature of deceased. They did not know that there was any writing at all upon the paper, nor did she sign it in their presence, nor tell them she had signed it, or in any way acknowledge that she had signed it. Neither of the witnesses knew her signature, or had ever seen her write. It appears that Mattie Holsten signed her own name, and, as her mother had forgotten her glasses, she also signed her name, Catharine McFetridge; Mrs. McFetridge making her mark at the end of the signature, and the deceased saying that would do. The paper was laid on the table by deceased, and lay there while being signed by Mattie Holsten for herself and her mother. The witnesses both testify they were on their way to church at the time of signing,

but it does not appear from the testimony whether it was Sunday or not. August 15, 1890, was Friday. Lucy H. Maginnis and Sarah J. Maginnis, granddaughters of deceased, and daughters of Sarah J. Maginnis, legatee and devisee named in the paper, both testified that the paper offered for probate, and the signature thereto, were in the handwriting of Lucy H. Eakins; also, that they had heard deceased say that she had made a will, and everything she had should be their mother's after her death.

The legislature of this state deemed it proper to throw certain safeguards about the proper execution of a will. This is eminently proper and just. A will, by its very nature, has no force and effect during the lifetime of the person making it. While granting the right to an individual to determine to whom his property shall belong after his death, the state very properly directs, as a precautionary measure to guard against fraud, imposition, or avarice, the methods by which that right must be exercised. Among them are the following:

"Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner: (1) It shall be subscribed by the testator at the end of the will. (2) Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses. * * * (4) There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator." 2 Rev. St. p. 63, § 40.

It is claimed by the contestant that the requirements of subdivisions 2 and 4 of this section were not complied with, in that there was no signing in the presence of the witnesses nor acknowledgment of it, and that the witnesses did not sign at the end of the will. If I am correct in my view of the law as to the first proposition of contestant, it is unnecessary to consider the second. Here, at least, was no subscription by the testatrix in the presence of each of the attesting witnesses, or pretense of it. It is equally clear that there was no acknowledgment by the testatrix to each or either of the two attesting witnesses. Showing a witness a piece of blank paper, with no signature or writing apparent upon it whatever, and saying, "This is my will," or "I have made my will. I want you to sign it," is not an acknowledgment of a subscription thereto by the testatrix, within the meaning of the statute. Attesting witnesses, by their nature, name, and designation, are to attest or witness something, and that something is the signature to the will. Two comparatively recent cases decided by the court of appeals deny probate to wills in which the facts are much stronger for probate than this case. Mitchell v. Mitchell, 77 N. Y. 596, affirming 16 Hun, 97; In re Mackay's Will, 110 N. Y. 611, 18 N. E. 433. In the first case, the deceased came into the store where the two witnesses were, and handed out a paper, and said, "I have a paper that I want you to sign." One of them took the paper, and partly opened it, and saw what it was. The witness probably, from his testimony, saw the signature. The testator said: "This is my will. I want you to witness it." Then the two witnesses signed the paper under the attestation clause. It does not ap-

pear that the other witness saw the testator's signature. The testator then took the paper, and said, "I declare this to be my last will and testament." At the time of this transaction the paper had the name of the deceased at the end of the paper, but the witnesses did not see him sign, nor was there any acknowledgment by him of his signature in their presence, unless the facts above stated are such an acknowledgment. It will be seen that in this case there was an attestation clause. The deceased had actually subscribed at the end of the will, one witness probably saw his signature, and the declarations of deceased were much stronger than in the present case, yet probate was refused. In the second case cited the subscribing witnesses came to the dwelling house of the deceased by previous appointment, and the deceased said, "Gentlemen, what I sent for you for was to sign my last will and testament." Thereupon he took from his writing desk the instrument offered for probate, and, laying it before the witnesses, said, "It is now all ready, awaiting your signatures." Both of the witnesses then signed, one of them making a remark showing that he understood it was a will. At the time of exhibiting the instrument to the subscribing witnesses, he told them it was his will, but handed it to them so folded that they could see no part of the writing except the attestation clause, and they did not see either his signature or seal. Judge Earl, in delivering the unanimous opinion of the court, says:

"The witnesses should either see the testator subscribe his name, or he should—the signature being visible to him and to them—acknowledge it to be his signature; otherwise imposition might be possible, and sometimes the purpose of the statute might be frustrated."

Probate was refused in this case; in my opinion, a much stronger case than the one now before me.

Considerable stress is laid by proponent on this being a holographic will, and it is insisted by her that in the probate of such a will the same rigid rules of construction should not be applied as when a will is prepared, and its execution supervised, by a careful attorney. It may be that this is so, and there are many cases that hold that a substantial compliance with the statute is sufficient, but there are no cases that hold that the requirements of the statute can be dispensed with in the execution of any kind of a will. This is not a case of negative testimony only,—the witnesses not recollecting whether certain acts were done or not,—but they testify positively that they were not done. The burden of proof is upon proponent to satisfy the court that the requirements of the statute were complied with. It is not a pleasant duty for a court to deliberately set aside a document apparently designed by the deceased to effect a disposition of her property after her death. Courts, however, must carry out the will of the legislature in regard to proper execution of wills, and, where certain rules have been prescribed for the transmission of property, would-be testators must bring themselves within those rules, in order to take advantage of their benign provisions. The statutes of descent and distribution are now so just and equitable that those desiring a different disposition of their property must

clearly manifest and carry out their disposition so to do within the prescribed forms of law. Probate of the paper offered as the last will and testament of Lucy H. Eakins is denied, and a decree may be handed up to that effect. The good faith of the executrix named in the paper offered for probate not having been questioned, costs are awarded to proponent and contestant, payable out of the estate.

Probate denied, with costs to both parties payable out of the estate.

(13 Misc. Rep. 553.)

## In re MENGE'S WILL.

(Surrogate's Court, Oneida County. July, 1895.)

1. WILLS—PROOF OF EXECUTION—SIGNING BY TESTATOR.
    The testimony of the scrivener and one witness of a will, which on its face is in due form, though contradicted by the other witness, is sufficient to prove that testator signed the will before the attestation clause was signed by the witnesses.
2. SAME—REQUEST TO WITNESSES TO SIGN.
    A statement to testatrix by the scrivener, who had been requested by her to draw her will, holding up the papers, "Mrs. M., here are M. and H. Do you wish them to act as witnesses to this, your will?"—to which she replied, "Yes, I do,"—is a sufficient publication of the will and request to the witnesses to witness the same.